```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION


UNITED STATES OF AMERICA      :
                              :    CRIMINAL ACTION
           v.                 :    NO. 1:13-CR-48-RWS-ECS
                              :
KENNETH J. ENRICO             :
```

**REPORT AND RECOMMENDATION**

**I.
Introduction**

This matter is before the Court on the motion to suppress statements, [Doc. 15], filed on behalf of Kenneth J. Enrico ("Defendant"). Defendant is charged by indictment with conspiracy to defraud consumers seeking to obtain loans by fraudulently enticing them to pay advance fees for loans that were never funded. [Doc. 1]. The motion to suppress relates to statements Defendant made when his apartment in Bohemia, New York, on Long Island, was searched pursuant to a federal search warrant. The undersigned conducted an evidentiary hearing on the motion on May 29, 2013, and requested that briefs be filed thereafter. Defendant filed his brief on July 9, 2013, and the government responded on July 24, 2013. A reply was permitted by July 30, 2013, but a reply was not filed by Defendant. The motion is therefore ready for this report and recommendation to the district judge.

For the reasons stated herein, I conclude that Defendant was not under arrest or "in custody" under Miranda v. Arizona[1] when he was interrogated and, therefore, Miranda warnings and a waiver were not required. Any statements Defendant made were not compelled or coerced and were voluntarily given. The motion to suppress, therefore, should be **DENIED**.

## II.
## The Facts

On October 17, 2012, in connection with an ongoing investigation in Atlanta of an alleged advanced fee fraud scheme, FBI Agent Joseph Stites obtained a search warrant for a residence located at 30 Westgate Drive, Apartment Seven, Bohemia, New York. See Gov't Exhs. 1, 2, 3. Thereafter, Agent Stites and other agents executed the warrant at that address on October 18, 2012. [T. 4].[2] Five agents arrived about 9:20 in the morning at the town-home style house to execute the warrant. There were also a financial analyst and an intelligence analyst present with them as well. [T. 7]. The agents wore "raid jackets" or vests, and badges identifying themselves as federal agents. [T. 8, 25-26].

---

[1] 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2] References to the transcript of the evidentiary hearing held May 29, 2013, will be indicated [T. "Page"].

2

Agent Stites was the lead agent. He knocked and announced why they were there — to execute a search warrant. [T. 8-9]. Defendant Enrico answered the door. [T. 9]. Agent Stites told him they were not there to make an arrest. [Id.]. The officers entered and performed a protective sweep. [T. 11, 35-36]. During the sweep, the agents' guns would have been drawn. [T. 25-26]. After that, the guns were put away. [T. 16]. Agent Stites never pulled his weapon. [T. 17]. From the beginning, Defendant was "very inquisitive," wanting to know what this was about. [T. 9]. Agent Stites explained that he had a search warrant, [T. 11], and that the case had to do with residential loans that had been submitted to Defendant and/or Enrico Corporation from borrowers in Atlanta. [T. 12]. He also told him that he would like to talk to Defendant about the case if he was willing. [Id.].

Defendant kept saying "I don't understand" repeatedly, which led another agent, Agent Scott Caruana, to remark to Defendant, "Don't play stupid; you know what we are talking about." [T. 12, 15, 36]. These remarks caused Defendant to fly into a rage and threaten to attack Agent Caruana. [T. 13, 37]. He began cursing the agent, trying to fight him. [T. 15]. He was very agitated. [T. 19]. At one point Defendant tried to move toward the agent, which caused the agent to pull out his ASP baton and raise it as if to defend himself if Defendant came at him. [T. 17-18, 37]. Other agents were between

3

Defendant and Agent Caruana, and no physical contact was made. [T. 18, 37]. About that time, Agent Caruana was asked to leave the room, and he did so. [T. 18, 38, 41-42]. Defendant settled down and was cooperative thereafter. [T. 15-16, 18, 21].

The search then began. Agent Stites explained to Defendant about the warrant again and reiterated that he had no arrest warrant for Defendant; that he was not under arrest; and that he was free to go at any time. [T. 18, 19, 28, 38, 40]. He told him he "would very much like to talk to [him] . . . . to hear his side of the story as well," if he was willing to talk. [T. 18]. Defendant suggested that they sit at the kitchen table and talk, which they did. [T. 19-20]. Agent Stites did not Mirandize Defendant. [T. 28]. They talked the entire time of the search, probably an hour to an hour and a half. [T. 20]. Defendant was asked about loans he had solicited or made and they talked about his lending program. [T. 20-21]. He was very pleasant after he calmed down. [T. 21]. He answered questions until, at some point, he said that he had answered all that he was willing to answer and did not want to answer any more questions. [T. 21-22]. The agents told him that was fine. [Id.]. Defendant was asked at some point if he needed a lawyer, to which Agent Stites responded that he could not advise him about that. [T. 31]. Defendant never, however, asked for a lawyer. [Id.]. Defendant was never handcuffed at any time. [T. 39-40].

4

At another point in their conversation, Agent Stites explained to Defendant that he had the right under the warrant to seize Defendant's phone. [T. 22]. This upset Defendant, and the agent worked it out that Defendant would give them his contact numbers from his phone and would be allowed to keep the phone. [Id.]. Then, at the end of the search, at about 1:00 in the afternoon, the agents provided Defendant with receipts for the items they were taking and gave him a copy of the search warrant and a grand jury subpoena. [T. 23-24]. They then left. Defendant was in the apartment when they left. [T. 23].

### III.
### Discussion

A person taken into custody must be advised, prior to any interrogation, of his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). The evidence is undisputed that Defendant was not advised of his Miranda rights before he was questioned by Agent Stites. The government contends that Miranda warnings were not required because Defendant was not in custody when he made the statements. [Doc. 30 at 6-10]. Defendant argues that he was in custody and that the agents were required to advise him of his rights and obtain a waiver before interrogating him. [Doc. 28 at 3-4].

5

Custody involves the deprivation of "freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612. "Even if a person has not been arrested, advice of Miranda rights is required if there is a restraint on freedom of movement 'of the degree associated with a formal arrest.'" United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (quoting Minnesota v. Murphy, 465 U.S. 420, 430, 104 S. Ct. 1136 (1984)); see also United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006). "[T]he initial determination of custody depends on the objective circumstances of the interrogation . . . ." Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994). When questioning takes place in surroundings familiar to the Defendant, courts are less likely to find that the defendant was in custody. See Beckwith v. United States, 425 U.S. 341, 345-47, 96 S. Ct. 1612, 1615-17 (1976) (Miranda not required where IRS interviewed taxpayer at his home). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151 (1984).

"[I]n order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he

would not feel free to leave." Muegge, 225 F.3d at 1270. "And, under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996) (citing Florida v. Bostick, 501 U.S. 429, 437-38, 111 S. Ct. 2382, 2388 (1991)). Indeed, a number of courts have found detentions during the execution of valid search warrants to be non-custodial. See Michigan v. Summers, 452 U.S. 692, 702, 101 S. Ct. 2587, 2594 (1981); United States v. Davis, 530 F.3d 1069, 1081-82 (9th Cir. 2008); United States v. McCarty, 475 F.3d 39, 46 (1st Cir. 2007); United States v. Bennett, 329 F.3d 769, 774 (10th Cir. 2003); United States v. Hernandez-Hernandez, 327 F.3d 703, 705-07 (8th Cir. 2003); United States v. Salyers, 160 F.3d 1152, 1159-60 (7th Cir. 1998).

The Supreme Court has recently described the inquiry into when an individual is "in custody" as follows:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

7

J.D.B. v. North Carolina, 131 S. Ct. 2394, 2402 (2011) (quoting Thompson v. Keohane, 516 U.S. 99, 112, 116 S. Ct. 457 (1995) (internal quotation marks, alteration, and footnote omitted)).

First, with regard to the circumstances surrounding the interrogation, the facts simply do not support a finding that Defendant was in custody for purposes of Miranda. The officers were not there to arrest Defendant; they were at the residence to execute a search warrant. [T. 9]. They arrived at 9:20 in the morning, during daylight, "business hours." [T. 7]. Defendant was not placed under formal arrest and was in fact told he was not under arrest. [T. 18-19, 28, 38, 40]. He was not handcuffed at any time, even when he tried to fight with one of the agents. [T. 39-40]. He was told he was free to leave if he wished. [T. 19, 40]. And, although the agents were armed, their weapons remained holstered except when they first entered to perform a protective sweep of the apartment before they conducted the actual search. [T. 16, 25-26].

There is no evidence that Defendant was coerced to talk with Agent Stites. He never asked or tried to leave. To the contrary, the evidence indicates that Defendant voluntarily sat down with Agent Stites at his own kitchen table and talked while the search was ongoing. [T. 19-20]. When he wanted to say no more, he stopped talking. [T. 21-22]. No one forced him to continue. [Id.]. At the

conclusion of the search, Defendant was given receipts and a copy of the warrant and the agents went on their way. [T. 23-24].

Second, with regard to the "utlimate inquiry," taking into consideration the factual circumstances surrounding the interrogation, and applying an objective test, I conclude that a reasonable person in Defendant's position would have felt free to terminate the questioning and leave. In this case there was no "formal arrest or restraint on freedom of movement of the degree associated with formal arrest." <u>J.D.B.</u>, 131 S. Ct. at 2402. Accordingly, Defendant was not in custody, <u>Miranda</u> warnings were not required, and the motion to suppress should be **DENIED**.

### IV.
### Conclusion

In conclusion, I find that Defendant was not "in custody" for purposes of <u>Miranda</u>, and that <u>Miranda</u> warnings were not required. Further, I find that Defendant's statements made to Agent Stites during the execution of the search warrant on October 18, 2012, were knowing and voluntary and were not coerced. Accordingly, I **RECOMMEND** that the motion to suppress statements, [Doc. 15], be **DENIED**.

In addition, it appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore

9

**ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 27th day of August, 2013.

                                            ***s/ E. Clayton Scofield III***
                                            E. Clayton Scofield III
                                            UNITED STATES MAGISTRATE JUDGE