ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 1 8 2013

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1 13-Cr-048-RWS-ECS |
| KENNETH J. ENRICO | : | (**Under Seal**) |

### EX-PARTE PETITION FOR A BENCH WARRANT FOR THE ARREST OF THE DEFENDANT AND FOR A HEARING TO SHOW CAUSE WHY HIS BOND SHOULD NOT BE PERMANENTLY REVOKED

Comes now the United States of America, by Sally Quillian Yates, United States Attorney, and David M. Leta, Assistant United States Attorney for the Northern District of Georgia, and files this Ex-Parte Petition for a bench warrant for the arrest of the defendant, Kenneth J. Enrico, and for a hearing to show cause why his pre-trial appearance bond should not be revoked. In support thereof, the government states as follows:

1. On February 19, 2013, a federal grand jury returned an indictment charging Enrico with violating 18 U.S.C. § 1349 and 18 U.S.C. § 1343. (Doc. 1).

2. In particular, the indictment alleges that Enrico ran an advanced fee scheme in connection with a private residential loan program he offered, doing business as the Enrico Corporation. Id. at ¶¶ 4, 8.

3. Among other things the indictment alleges that Enrico directly and indirectly (through brokers) instructed prospective borrowers to send to him thousands of dollars in processing fees

and copies of the their tax returns, pay stubs, and driver's licenses so they could obtain loans for his private loan service. Id. at ¶ 9. Once the fees and information were received, Enrico approved the borrowers for loans and advised them either directly or indirectly (through brokers) that the closing for the loan would be scheduled within six to eight weeks. Id. Relying on Enrico's representations or those of the brokers, the borrowers routinely entered into sales contracts and paid earnest money to property owners. Id. As of the date of the filing of the indictment, Enrico has not funded any of these loans nor have the loans otherwise closed nor has he refunded the processing fees to the borrowers. Id. at ¶ 11.

4. The indictment further alleges that when the loans did not close, the borrowers would lose their earnest money as well as the opportunity to purchase the properties. Id. at ¶ 9. Enrico repeatedly lulled the borrowers with false excuses promising that the loans would close soon. Id. The borrowers relied on the lulling promises to their detriment, often entering into new sales contracts for their properties, putting up additional earnest money, delaying the demand for the return of their a processing fees and foregoing reporting Enrico to law enforcement authorities. Id.

5. The indictment further alleges that since 2011, over 350 borrowers sent in excess of $1,280,000 in up-front fees and their

financial information to Enrico directly or indirectly (through brokers). Id. at ¶ 10.

6. On March 4, 2013, Enrico made his initial appearance before the Honorable Janet F. King, U.S. Magistrate Judge on the above captioned indictment. (Doc. 7.). Enrico pleaded not guilty and was released on a $25,000 unsecured bond, which contained the condition that he not violate Federal, State or Local law while on bond. (Doc. 10).

7. On June 28, 2013, Trevor Carter from Bronx, New York contacted Special Agent Joseph Stites of the Federal Bureau of Investigation and advised him that in 2012, he was referred to Enrico, doing business as Enrico Corporation, as a private residential lender by a banker in Queens, New York. Carter put Enrico's telephone number into his cellular telephone contacts list.

8. Mr. Carter further advised Agent Stites that in May 2013, he phoned Enrico to see if he would be able to fund a mortgage loan in the amount of $295,000 for the purchase of a real estate property located at 31 St. Joseph Ave., Yonkers, New York.

9. Mr. Carter further advised that Enrico told him that he would be able to fund the mortgage loan and that Carter would have to pay him $2,500 so that he could order a title search and an appraisal on the property. Enrico also told Carter that the $2,500 would cover any of the fees at closing.

10. Mr. Carter further advised that on June 25, 2013, he sent via Federal Express, a certified check for $2,250 to Enrico. Carter did not have the full $2,500 to send to him, so he sent only $2,250 and told Enrico that he would pay the remaining $250 at a later date.

11. Mr. Carter further advised that on June 27, 2013, Enrico called him and told him that he had spoken with his team and that Carter's loan was approved. Enrico also told Carter that a title search and appraisal had been ordered on the property. When Carter asked him for a loan approval/commitment letter for the loan, Enrico said that he would get one to him the following Monday. As of this date of this pleading, Enrico has not sent Carter a loan approval/commitment letter.

12. Mr. Carter further advised that since June 27, 2013, he has called Enrico several times, and each time Enrico demands that Carter pay him the remaining $250 before he will process Carter's loan.

13. Beginning on July 15, 2013, and continuing through September 5, 2013, agents of the Federal Bureau of Investigation used a Confidential Human Source (CHS) to record phone calls with Enrico. The CHS called Enrico regarding obtaining a loan with Enrico through his private residential mortgage loan program that the Enrico Corporation offered. Enrico told the CHS that he was in the private mortgage business and that he would be able to provide

the CHS with a 30 year fixed mortgage loan with an interest rate in the high threes or low fours. Enrico asked the CHS to text him the CHS's name, current address, date of birth, and social security account number, so that he could run the CHS's credit report. Enrico told the CHS that he/she would be required to provide a $2,500 fee in order for him to process the loan, run a title search, and order an appraisal on the CHS' property.

14. Enrico further told the CHS that he/she would need to send him his/her loan application supporting documents, to include Form W-2 and pay stubs. The CHS attempted on numerous occasions to either meet with or send to Enrico the CHS's loan application supporting documentation and $2,500. Enrico provided numerous excuses in order to delay moving forward with the CHS' loan. As of the date of this writing, the CHS is waiting for Enrico to move forward with processing the CHS's loan.

WHEREFORE, since Enrico has consistently disregarded the conditions of his bond to not violate federal, state and local laws, by continuing to commit wire fraud, the government respectfully requests that a bench warrant be issued for Enrico's arrest, and that upon his apprehension a hearing be scheduled for him to show cause why his bond should not be permanently revoked and he be detained, pursuant to 18, United States Code, Section 3142, until resolution of the above-styled case, as it is clear that there are no set of conditions that will assure his appearance

5

as required and that he will not endanger the safety of the community.

Further for security reasons, the government requests that the Court SEAL this Motion for a Bench Warrant and Hearing to Show Cause and the Order. Publication of the Motion and Order would jeopardize the apprehension of the Defendant and increase his risk of flight. Further, the investigation of his additional criminal activity remains ongoing and the government expects that there will additional evidence identified and additional criminal activity discovered. United States v. Ochoa-Vasquez, 428 F.3d 1015, 1030 (11th Cir. 2005).

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

/s/ DAVID M. LETA
ASSISTANT UNITED STATES ATTORNEY

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA 30303
(404)581-6037
(404)581-6181 (Fax)

Georgia Bar No. 447931
david.leta@usdoj.gov

## VERIFICATION

Pursuant to Title 28, United States Code, Section 1746, I verify under penalty of perjury that the factual statements in the foregoing petition for a bench warrant and hearing to show cause, are true and correct to the best of my knowledge and belief.

Executed on ___9-18-13___ .

JOSEPH D. STITES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION